IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **LORRIE SELBY AND SONIA AGUIRRE,** § § | | |
| **Individually, and on behalf of all others similarly situated,** § § § § | | |
| Plaintiffs, § § | | |
| § | **CIVIL ACTION NO.** | |
| v. § § | | |
| **LGI HOMES CORPORATE, LLC,** § § | | |
| Defendant. § | | |

## PLAINTIFFS' ORIGINAL CLASS ACTION COMPLAINT

**I.**

## INTRODUCTION

Plaintiffs Lorrie Selby (Selby) and Sonia Aguirre (Aguirre) (collectively Plaintiffs), individually and on behalf of all others similarly situated (Plaintiff Class), file this Original Class Action Complaint against Defendant LGI Homes Corporate, LLC.

## II.

## PARTIES

1. Plaintiff Lorrie Selby is an individual and a citizen of Hunt County, Texas.

2. Plaintiff Sonia Aguirre is an individual and a citizen of Collin County, Texas

3. Defendant is a corporation organized under the laws of the state of Texas with its principle place of business located at 1450 Lake Robbins Drive, Suite 430, The Woodlands, Texas 77380. Defendant may be served with process, including summons and a copy of this lawsuit, by serving Defendant's registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, at 211 E. 7th Street, Suite 620 Austin, Texas 78701.

## III.

## JURISDICTION

4. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs assert a claim arising under federal law.[1]

## IV.

## VENUE

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in Collin County.

6. Collin County lies within the Sherman Division of the Eastern District of Texas, as set forth in 28 U.S.C. § 124(c)(3).

---

[1] 28 U.S.C. § 1331.

# V.

# COVERAGE ALLEGATIONS

7. Defendant transacts substantial business in this judicial district.

8. At all material times, Defendant has been an employer within the meaning of 29 U.S.C. § 203(d).

9. At all material times, Defendant has been an enterprise within the meaning of 29 U.S.C. § 203(r).

10. At all material times, Defendant has been an enterprise engaging in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. § 203(s)(1), in that said enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.00 (exclusive of excise taxes at the retail level which are separately stated).

11. At all materials times, Plaintiffs were individual employees of Defendant who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. §§ 206-207.

# VI.

# BACKGROUND FACTS

12. Plaintiffs worked as Office Managers at Defendant's construction projects in Forney, Royse City, Anna, and Howe, Texas.

13. Office Managers are primarily responsible for entering daily sales leads, and preparing paperwork and handling all administrative tasks related to closings on Defendant's newly constructed homes within the respective subdivisions where they worked.

14. Office Managers have no supervisory authority over any other employees, are paid hourly, and are not exempt from the minimum wage and overtime laws.

15. Office Managers have a scheduled workday of 8:30 a.m. until 5:00 p.m.

16. Office Manager positions are created and normally expected to close an average of six newly constructed homes per month.

17. At the time Selby was terminated, she was routinely conducting up to twenty-four closings per month on newly constructed homes.

18. As such, all Plaintiffs were routinely required to work more than forty hours per week, but were not paid overtime.

19. Defendant knew that Plaintiffs regularly worked more than forty hours per week but were not regularly given either appropriate comp time for the hours worked, nor were they paid one and one half times their regular rate of pay for all hours worked in excess of forty per week.

20. For example, Regional Office Manager Johnna Reed told Selby at the time she was hired, and later, that Defendant's policy was "no OT—if you work over forty hours get with your manager and get time off instead," or words to similar effect; but Reed make clear to Selby that she was not to report her actual hours worked if they exceeded forty in a week.

21. Plaintiffs, however, were rarely given comp time off for working more than the regularly scheduled workday, and instead were required to work to complete all tasks, resulting in them working more than forty hours but not being paid one and one half times their regular rate of pay for all hours worked in excess of forty per week.

22. Plaintiffs frequently were unable to take a lunch break during which time they were completely relieved of all their work duties; despite this, Defendant automatically deducted thirty minutes from Plaintiffs' time each day for a lunch break.

23. Furthermore, every Thursday, Plaintiffs were required to have a "working lunch" where they ate lunch but were required to conduct office business during the lunch.

24. Despite this, Defendant automatically deducted one half hour from their time each week for a lunch break that Plaintiffs were not allowed to take.

25. When Selby approached Amanda Barbarez and asked why she was being required to work far more than forty hours a week without being paid overtime, Barbarez told Selby "because they won't allow us to," or words to similar effect.

26. When Selby approached Drew Ballard and asked why she was being required to work far more than forty hours a week without being paid overtime, Ballard told Selby that she must not be doing her job right, or words to similar effect.

27. When Selby approached Stacy Conley and asked why she was being required to work far more than forty hours a week without being paid overtime, Conley told Selby "You can get the job done in eight hours," "it can be done; others do it in eight hours," or words to similar effect.

28. When Selby approached then Vice President of Operations Lucas Landsman (who was subsequently promoted to Division President over the Dallas/Fort Worth area), and asked why

she was being required to work far more than forty hours a week without being paid overtime, Landsman told Selby "You can get the job done in eight hours," "other office managers get it done in eight hours," or words to similar effect.

29. When Selby was reassigned to work at Defendant's project in Shady Oak Estates, she was told that she would be "twice as busy."

30. Selby pushed back and told Ballard, Conley, and Landsman that she could not get the job done in eight hours.

31. Conley and Landsman told Selby "it's been done," or words to similar effect.

32. When Selby continued to question why she had not been properly paid, Ballard told her Defendant was going to pay her a $5,000.00 "Loyalty/Appreciation" bonus for having raised all her concerns.

33. Although initially there was no mention that this "bonus" was to be in lieu of all Selby's overtime wages, that quickly became the case.

34. Defendant held a meeting with Selby, Mike, Drew, Stacy, and Lucas, at which Mike told Selby Defendant had decided not to pay her anything because Defendant did not think Selby was interested in the bonus.

35. When Selby told Mike this was untrue, Mike said Defendant might consider paying the bonus but he "did not want this brought up again," or words to similar effect, and told Selby a list of names of people that this agreement would apply to (i.e., that Selby should never talk to about the overtime issue again).

36. When Defendant asked Selby if she had any records of her overtime, she told them she did, and she had it at her home.

37. Conley then drove Selby to her home to get those records.

38. When Selby told Conley she wanted to make a copy of the records so that she could have the originals for herself, Conley terminated Selby's employment on the spot.

39. Meanwhile, Johnna Reed told Aguirre "no OT—if you work more that forty hours get with your manager and get time off instead," or words to similar effect.

40. Reed told Aguirre she would get comp time, to be worked out with her manager, in lieu of overtime.

41. But many times, Aguirre worked more than forty hours in a week, was not allowed to report it, and was not given comp time as promised, nor paid time and one half for the hours she worked over forty in a week.

42. Furthermore, on those occasions Aguirre was given comp time, she was only given comp time for an hour, as opposed to time and a half.

## VII.

## COLLECTIVE ALLEGATIONS

43. Like Plaintiffs, other Office Manager employees of Defendant across the country have been victimized by these unlawful practices.

44. Some of these employees have reported to Plaintiffs that they were paid in the same manner as Plaintiffs with no overtime pay for time worked in excess of forty hours per workweek.

45. From discussions with these employees, Plaintiffs are aware that Defendant's illegal policies and practices have been uniformly imposed on the Class Members.

46. The Class Members perform the same or similar job duties, including that they all perform non-exempt work.

47. These employees are similarly situated to Plaintiffs in terms of job duties and pay provisions.

48. Defendant's failure to pay minimum wage and overtime compensation at the rates required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the Class Members.

49. Thus, Plaintiffs' experiences are typical of the experiences of the Class Members.

50. The specific job titles or precise job requirements of the various Class Members do not prevent collective treatment.

51. All Class Members, regardless of their precise job requirements or rates of pay, are entitled to overtime compensation (one and one half their regular rate of pay) for all time worked in excess of forty hours per workweek.

52. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts.

53. The questions of law and fact are common to Plaintiffs and the Class Members.

54. Accordingly, the class of similarly situated plaintiffs is properly defined as:

**All Office Managers**

55. As a collective action, Plaintiffs seek this Court's appointment and/or designation as representative of a group of similarly situated individuals as defined.

## VIII.

## CAUSES OF ACTION

**A.  First Cause of Action—Failure to Pay Wages in Accordance with the FLSA—Plaintiffs and the Plaintiff Class**

56. Plaintiffs and the Plaintiff Class incorporate each of the foregoing paragraphs.

57. Defendant's practice of not paying employees, including Plaintiffs, one and one half times their regular rate of pay for all hours worked in excess of forty hours in a workweek

58. Defendant's actions violate 29 U.S.C. §§ 206, 207, and 215(a)(2).

### B. Second Cause of Action—Unlawful Retaliation—FLSA—Selby

59. Selby incorporates each of the foregoing paragraphs.

60. Selby engaged in protected activity as set forth in 29 U.S.C. § 215(a)(3).

61. In response, Defendant terminated Selby's employment.

62. Defendant's actions violated 29 U.S.C. § 215(a)(3).

## IX.

## DAMAGES

63. Plaintiffs and the Plaintiff Class incorporate each of the foregoing paragraphs.

64. Defendant's actions violated 29 U.S.C. § 207(a).

65. Pursuant to 29 U.S.C. § 216(b), Plaintiffs and the Plaintiff Class seek to recover all unpaid minimum wages and unpaid overtime compensation.

66. Plaintiffs and the Plaintiff Class also seek as liquidated damages an amount equal to that recovered for unpaid minimum wages and unpaid overtime compensation.

67. Plaintiffs and the Plaintiff Class seek all damages available to them under federal law.

68. Selby also seeks lost wages and liquidated damages resulting from Defendant's unlawful retaliation in terminating her employment.

## X.

## ATTORNEYS' FEES AND COSTS

69. Plaintiffs and the Plaintiff Class incorporate each of the foregoing paragraphs.

70. Plaintiffs retained the services of undersigned counsel to prosecute their claims.

71. Plaintiffs and the Plaintiff Class are entitled to recover a reasonable attorneys' fee from Defendant, including costs.

## XI.

## JURY DEMAND

72. Plaintiffs and the Plaintiff Class demand a trial by jury.

## XII.

## CONCLUSION AND PRAYER

73. Plaintiffs and the Plaintiff Class respectfully request that Defendant be cited to appear and answer, and that upon final trial of this matter, the Court enter judgment against Defendant, awarding Plaintiffs and the Plaintiff Class:

    A.    All unpaid minimum wages and unpaid overtime compensation;

    B.    Liquidated damages equal to the amount in subsection (A) above;

    C.    Lost wages and liquidated damages to Selby;

    D.    Reasonable attorneys' fees and expert fees;

    E.    Court costs;

    F.    Pre-judgment and post-judgment interest at the rate set by law; and

    G.    All legal or equitable relief this Court deems proper.

Respectfully submitted,

/s/ Matthew R. Scott
MATTHEW R. SCOTT
Texas Bar No. 00794613
matt.scott@scottperezlaw.com
JAVIER PEREZ
Texas Bar No. 24083650
javier.perez@scottperezlaw.com
**SCOTT | PEREZ LLP**
Founders Square
900 Jackson Street, Suite 550
Dallas, Texas 75202
214-965-9675 / 214-965-9680 (Facsimile)
**ATTORNEYS FOR PLAINTIFFS**